(118 App. Div. 723)

### PEOPLE v. WALDORF–ASTORIA HOTEL CO.

(Supreme Court, Appellate Division, First Department. March 22, 1907.)

1. GAME—KEEPING FOR SALE—FOREIGN GAME—STATUTES.

Laws 1900, p. 28, c. 20, § 31, as amended by Laws 1904, p. 1409, c. 582, provides that there shall be no open season for English pheasants, nor shall the same be killed or possessed, except in Suffolk county, prior to 1910; provided, that pheasants bred or purchased and liberated in S. county by the game clubs and private owners may be possessed in Greater New York for consumption, but not for sale. Laws 1902, p. 487, c. 194, provides that, whenever the possession of fish or game is prohibited, reference is had equally to such fish or game coming from without the state as to that taken within the state. *Held*, that the possession of English pheasants for sale by a hotel company in New York City, though raised and killed in a foreign state, was a violation of the act.

2. SAME—REGULATION—LEGISLATIVE POWER.

The Legislature has power to regulate and prohibit the possession of game by its citizens not applicable to other personal property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Game, § 2.]

3. CONSTITUTIONAL LAW—DEPRIVATION OF PROPERTY—DUE PROCESS OF LAW—GAME REGULATIONS.

Laws 1900, p. 28, c. 20, § 31, as amended by Laws 1904, p. 1409, c. 582, and Laws 1902, p. 487, c. 194, § 141, prohibiting the possession for sale of English pheasants until the year 1910, except that pheasants bred or purchased and liberated in S. county might be possessed in Greater New York for consumption only, was not unconstitutional, in so far as it prohibited the possession of pheasants raised and killed in, and imported from, another state, as a deprivation of property without due process of law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 823.]

Appeal from Trial Term.

Action by the people of the state of New York against the Waldorf-Astoria Hotel Company to recover a penalty for the alleged violation of the forest, fish, and game law. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRA-HAM, CLARKE, and HOUGHTON, JJ.

George W. Wickersham, for appellant.

Robert C. Beatty, for the People.

INGRAHAM, J. The question here presented arises under section 31 of the forest, fish, and game law (chapter 20, p. 28, of the Laws of 1900, as amended by chapter 582, p. 1409, of the Laws of 1904). The conceded facts upon which this case was tried are that certain English pheasants were possessed by the defendant on the dates alleged in the complaint for sale; that these English pheasants were bred and killed in the state of New Jersey, and purchased by the defendant in that state. The trial court held as a conclusion of law that the possession of these pheasants was a violation of section 31 of the forest, fish, and game law.

Section 31 is as follows:

"There shall be no open season for * * * English pheasants, nor shall the same be killed or possessed except in the county of Suffolk, prior to the year nineteen hundred and ten; provided, however, that pheasants bred or purchased and liberated in Suffolk county, by the game clubs and private owners, may be possessed in Greater New York for consumption, but not for sale."

And section 141 of the same act, which was added by chapter 194, p. 487, of the Laws of 1902, provides that:

"Whenever in this act the possession of fish or game, or the flesh of any animal. bird or fish, is prohibited, reference is had equally to such fish, game or flesh coming from without the state as to that taken within the state."

The possession of English pheasants for sale in the city of New York, whether killed in a foreign state or not, and whether for consumption or sale, is prohibited, except that within the territory of Greater New York pheasants bred or purchased and liberated in Suffolk county by the game clubs and private owners may be possessed for consumption, but not for sale. Therefore no one can be possessed of English pheasants in the city of New York for sale before 1910. It is conceded that the birds in possession of the defendant were neither bred nor purchased and liberated in Suffolk county, and so it would appear that the possession of these birds in the city of New York was a violation of the statute. The Legislature having jurisdiction to prohibit absolutely the possession of these birds at any time within the state, it could allow birds killed, bred, or purchased in a certain locality to be possessed for consumption, and prohibit the possession of birds killed in other counties, or in a foreign country or state.

It is contended, however, that this section is a violation of the fourteenth amendment to the federal Constitution, and of the state Constitution. The decision of the Court of Appeals in People v. Buffalo Fish Co., 164 N. Y. 93, 58 N. E. 34, only decided that, on the construction of section 110 of the game law, that section did not then apply to fish taken without the state. That case was decided in the year 1900, and section 141 was not then a part of the act, but was added by chapter 194, p. 487, of the Laws of 1902. So the provisions of section 141 were not before the court. The conclusion as to the constitutional question by Judge O'Brien was concurred in by Parker,

C. J., and Landon, J. Judges Gray, Haight, and Martin expressly dissented. They held the statute constitutional, even containing, as they construed it, prohibition as to the possession of game purchased without the state. Judge Werner concurred upon the construction of the statute that it did not prohibit the possession of fish caught without the state. The case, therefore, seems to be that three judges held a provision prohibiting the possession of fish taken without the state to be unconstitutional, three judges held it to be constitutional, and one judge expressing no opinion upon that question.

The court, however, in the later case of People ex rel. Hill v. Hesterberg, 184 N. Y. 126, 76 N. E. 1032, 3 L. R. A. (N. S.) 163, following the case of People v. Bootman, 180 N. Y. 1, 72 N. E. 505, expressly held that it was within the power of the Legislature, in order to effect the preservation of game within the state, not only to enact a close season during which the possession of such game should be unlawful, but also to enact a provision that the possession during such season of game taken without the state should be also unlawful. In People v. Bootman, supra, the court said:

"The right to pass laws for the protection of game being conceded, as in view of the authorities it must be, the method of affording protection is necessarily within the discretion of the Legislature. It may provide a close season for the taking of game, and may prohibit the possession or sale of game during that season. It may close the game market throughout the state during the period of prohibition, in order to remove temptation from poachers or pot-hunters, who are not apt to run the risk of taking game out of season, if they cannot sell it. To do this effectively it may be necessary to close the market as to game taken without the state, as well as within; for there are no marks by which birds killed in Michigan can be distinguished from those killed in New York. When enacting a game law the Legislature may provide for its ready enforcement, not simply by making the possession of game during the close season presumptive evidence of a violation of the statute; but it may go farther, and, in order to prevent evasion, fraud, and perjury, may prohibit the possession of game in this state during the close season, even if it was taken in another state and brought here during the open season. * * * Such provisions are warranted by the police power, and are not in conflict with either the state or federal Constitution."

The Legislature thus having the power, the method adopted was within its discretion, and this the courts have no power to review. If it could prohibit the possession of birds killed in the whole state, or in a foreign state or country, I can see no reason why it cannot prohibit the possession of birds killed in a foreign state, and all parts of the state, except one county; and, if it could absolutely prohibit the possession of birds killed in all but one county, it could prohibit the possession of birds for sale from that one county, allowing the possession of such birds merely for the purpose of consumption. If the sale of birds is prevented, it is quite apparent that the number of birds killed will be greatly reduced. The power to absolutely prohibit seems to me to involve the power to conditionally prohibit; and the conditions that are to be imposed upon the possession of any birds within the prohibited period is necessarily within the discretion of the Legislature.

The cases cited by the learned counsel for the appellant which relate to the ordinary vocation of the people, or the right to possess and sell

personal property generally, have no relation to game, over which the Legislature has a peculiar power not applicable to personal property in general. That was the effect of the decision in the Bootman Case, supra, as I understand it, as the distinction is there plainly drawn between game in which the people of the state have a peculiar interest, and ordinary personal property, the possession and ownership of which is protected by the Constitution.

I think, therefore, that this judgment was right, and should be affirmed. All concur.